UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEON BROTHERS, NO LIMIT CLOTHING, INC.,
and PATRICIA HART,

        Plaintiffs,

v.

        Case No. 09-13574
        Honorable Julian Abele Cook, Jr.

ALLSTATE INSURANCE COMPANY,

        Defendant.

## ORDER

On August 24, 2009, the three Plaintiffs, Patricia Hart, Leon Brothers, and No Limit Clothing, Inc. ("No Limit"), filed a complaint in the Wayne County Circuit Court of Michigan, in which they collectively accused the Defendant, Allstate Insurance Company ("Allstate"), of wrongfully denying requests for payment under their respective fire and theft insurance policies. In pursuing their claims against Allstate, each of the Plaintiffs are seeking to obtain damages for breach of contract, breach of fire loss insurance coverage, and violations of Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, et seq. ("ELCRA"). On September 10th of the same year, Allstate caused the case to be removed to this federal court on the basis of its diversity jurisdiction.

On April 26, 2010, Allstate filed a motion for the entry of a partial summary judgment, requesting that the Court find that none of the Plaintiffs had stated a prima facie case of discrimination under the ELCRA. The Plaintiffs have expressed their opposition to Allstate's

1

motion.

I

The Defendant, Allstate, is an Illinois corporation which provides various types of liability insurance to the general public. Allstate covered all three of the Plaintiffs under separate and unrelated insurance policies during all of the times that are relevant to this controversy.

A.

The Plaintiff, Leon Brothers, is an African-American male and a resident of Detroit, Michigan. He maintained a renter's policy with Allstate which insured his personal properties at 7730 Navy Street in Detroit, Michigan. On April 28, 2008, a fire was reported at 4:11 a.m. in his residence. In making this claim, it is Brothers' contention that the fire was caused when a "Molotov Cocktail" fire bomb was thrown through his kitchen window while he and his family were sleeping. After his family was evacuated, a second fire at the same residence was reported at 5:52 a.m.

Allstate asserts that a private fire investigator, Mark Pelot of Certified Investigations International, conducted a thorough investigation of the two fires at the Navy Street residence and uncovered evidence which contradicted Brothers' version of the incident. As a result of his investigation, Pelot concluded that Brothers had made some material false representations in his claim. In relying upon Pelot's findings, Allstate submits that this evidence suggests Brothers was improperly involved in the intentional setting of the two fires on April 28th. Allstate supports its suspicions of Brothers' foul play by proffering evidence that he, being in a poor financial situation at the time of the incident, had a motive to set the fire in an effort to garner the insurance money.

Brothers rejects these arguments, asserting that he has reliable evidence (i.e., Detroit Fire Department reports, Detroit Police Department reports, and witness testimony) all of which facially

refute Allstate's suspicions. Moreover, Brothers contends that Allstate's inquiries into his family's past credit history and criminal records were conducted with an unlawful discriminatory intent to deny his claim for racial reasons.

B.

Another Plaintiff, Patricia Hart, is a twenty-four-year-old African-American female who is a resident of Detroit, Michigan. She maintained a landlord policy with Allstate which insured her home at 19342 Reno in Detroit, Michigan. On September 2, 2008, a fire was reported at her residence at 7:54 in the evening. Hart subsequently submitted a claim for $122,749 which represents the cash value of her home, as appraised by Allstate.

Mark Pelot, who had been hired by Allstate to conduct an investigation of the September 2nd fire, opined that the fire at the Hart residence had been intentionally set. Furthermore, Allstate maintains that Hart had falsely testified during a recorded deposition that she was renting the home to a tenant, Christopher Harris, at the time of the fire. In rejecting this claim, Allstate submits that Pelot's investigation indicated that Hart's home was uninhabited at the time of the fire. Moreover, Allstate submits that Hart failed to provide it with all of the requisite documentation upon which to complete her "loss" application.

Hart challenges these assertions, insisting that she has submitted reliable documentation of her fire loss (i.e., a sworn statement of loss, a list of an itemized inventory of the destroyed property, responses to questions by Allstate investigators, as well as the sworn statements of Christopher Harris, and her property manager, Jason Vereen). Hart finally maintains that Allstate denied her claim solely "because she was young, female, African-American, and owned a home in Detroit." (Hart's Resp. to Def.'s Interrog. No. 2.)

3

C.

The third Plaintiff, No Limit, is a Michigan corporation, which maintained a commercial property insurance policy. On November 8, 2007, a burglary was reported at the company's place of business at 2701 East Eight Mile Road in Warren, Michigan. The owner of No Limit, Mohamed Dib, who is of Lebanese descent, filed a claim with Allstate on behalf of his company, seeking payment of $90,000 in lost merchandise and $40,000 in lost business income. However, Allstate rejected his request for payment following an internal investigation which included a review of the store's financial records by an independent certified public accountant, Sharon Filas. It was Allstate's conclusion that Dib had proffered false testimony regarding the value of the stolen items. Allstate, being unable to verify his purchase invoices, contends that Filas' investigation revealed that No Limit had been losing money during the three month period prior to the burglary.

No Limit claims that it fully complied with the terms of its insurance policy by filing a timely proof of loss, providing Allstate with financial statements and invoices concerning the stolen merchandise, and submitting to a deposition conducted by Allstate investigators following the burglary. No Limit also asserts that it provided Allstate with a police report upon which to substantiate its claim that the store had actually been burglarized. As such, No Limit believes that the national origin and ethnicity of its owner, Dib, is the true reason why Allstate has rejected the application for the payment of the insurance benefits.

II.

The purpose of the summary judgment rule "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Therefore, an entry of a summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). When assessing a request for a summary judgment, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991).

In order for a dispute to be genuine, it must contain evidence upon which a jury could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). Thus, the moving party has the obligation of demonstrating the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. A moving party can discharge its burden by showing the court that the evidence in the record is insufficient to support the nonmoving party's case. *Id.* at 325; *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005).

When the moving party submits a properly supported motion for a summary judgment, the nonmoving party must present specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 256. The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

III.

In this case, the Plaintiffs assert that they were subjected to acts of unlawful discrimination when Allstate denied their respective insurance claims for reasons that are impermissible and in violation of the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, et seq. ("ELCRA").

5

They point out that, as a business which sells a service to the general public, Allstate is subject to § 37.2302(a) of the ELCRA, which states that:

> Except where permitted by law, a person shall not [d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

In 1992, the Michigan Supreme Court declared that the discriminatory processing of insurance claims was not within the scope of § 37.2302. *See Kassab v. Michigan Basic Prop. Ins. Ass'n*, 491 N.W.2d 545, 547-48 (Mich. 1992). Fifteen years later, *Kassab* was overruled when a successor panel concluded that (1) compliance with § 37.2302 is not limited to providing equal access to public accommodations and services, and (2) the provisions within this statute also require that a place of public accommodation provide an individual with the full and equal *enjoyment* of those accommodations and services without discrimination. *Haynes v. Neshewat*, 729 N.W.2d 488, 494-95 (Mich. 2007). A reading of *Haynes* suggests that the ELCRA provides a cause of action in the insurance context. Thus, the Court finds that the Plaintiffs in this case have presented a valid Michigan state-law theory.

A discrimination claim can be established by presenting direct or circumstantial evidence. *See Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520 (Mich. 2001). Direct evidence is defined as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the [defendant's] actions." *Id*. Michigan courts rely on the framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to determine if circumstantial evidence has created an inference of discrimination. *Hazle*, 628 N.W.2d at 520.

*McDonnell Douglas* requires the plaintiff to establish the elements of a prima facie case of discrimination by a preponderance of the evidence. 411 U.S. at 802. If this burden is satisfied, then

6

the defendant must articulate some legitimate, nondiscriminatory reason for the adverse action taken against the plaintiff. *Id.* If the defendant meets this burden of production, then the plaintiff must bear the ultimate burden of persuasion by showing that the nondiscriminatory reasons advanced by the defendant are merely a pretext for discrimination. *Id.* at 804.

Inasmuch as the *McDonnell Douglas* framework was created to address discrimination in employment practices, the Court of Appeals for the Sixth Circuit has adopted a modified version of this framework by which courts can determine whether an aggrieved plaintiff has presented a prima facie case of discrimination in the commercial context:

> [T]he plaintiffs must show that: (1) they belonged to a protected class; (2) they sought to make [or enforce] a contract for services ordinarily provided by the defendant; and (3)[(a)] they were denied the right to enter into [or enforce] a contract for such services while similarly situated persons outside the protected class were not, or [(b)] they were treated in such a hostile manner that a reasonable person would find it objectively discriminatory.

*Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 639 (6th Cir. 2009) (citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001)). To find that a plaintiff was treated in a "markedly hostile manner," the courts must consider whether the defendant's conduct is "(1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination." *Keck*, 566 F.3d at 641 (quoting *Christian*, 252 F.3d at 871) (internal quotations omitted).

Although they have not applied the above framework as of this date, Michigan courts often seek guidance from federal precedent when analyzing discrimination cases. *See Radtke v. Everett*, 501 N.W.2d 155, 162 (Mich. 1993). Thus, the Court has chosen to adopt this framework in

7

analyzing the discrimination claims by the Plaintiffs in the present action.[1]

A.

Brothers argues that Allstate engaged in a purposeful and systematic campaign to deny his insurance claim solely for reasons of race. However, Allstate denies Brothers' charges of racial discrimination, and submits that he has failed to provide any direct or circumstantial evidence of discriminatory conduct in the processing of his insurance claim.

An examination of the current record reveals that Brothers has not proffered any statements or conduct which could arguably be construed as direct evidence of racially discriminatory conduct by Allstate in its handling of his application for insurance benefits even when viewing the facts in a manner that is favorable to him. As such, the Court will now analyze his proffer of circumstantial evidence by utilizing the standards under *Keck*.

There are two *Keck* factors that are plainly evident from a reading of the complaint. First, the Plaintiffs note that they are a part of a class of persons who, by virtue of their race, gender, national origin and religion, are protected citizens under Michigan law. Second, there appears to be no disagreement among the parties that the Plaintiffs are seeking to enforce the terms of an insurance contract from the insurer, Allstate. As such, the Court finds that the first two elements of the *Keck* framework are satisfied.

---

[1] The complaint in this case alleges that the "Plaintiffs are a part of a protected class of persons due to gender, national origin and religion pursuant to [the laws in Michigan]." (Compl. at ¶ 46). The complaint also alleges that the Plaintiffs were "discriminated against and assumed to have made false claims due to their religion, national origin, race and gender." (*Id.* at ¶ 48) . Although the complaint makes reference to discriminatory practices by Allstate based on religion, none of the parties discuss this claim. Moreover, the Plaintiffs have not identified which of them were allegedly subjected to discrimination because of their religion. Therefore, the Court assumes that this claim of religious discrimination has been abandoned by the Plaintiffs.

In order to satisfy the third prong of the test, Brothers would have to provide evidence that he was denied the right to enforce the contract while similarly situated persons who were outside of his class did not suffer from the same type of discriminatory conduct. More importantly, Brothers has failed to offer any evidence regarding Allstate's treatment of its white customers who have filed claims with Allstate under factually similar circumstances.

Brothers also complains that Allstate launched an investigation into his and his wife's criminal and credit history during its investigation of the fire insurance claim. These questionable efforts by Allstate are, in Brothers' opinion, evidence of the discriminatory intent by this insurance carrier to uncover information that would reflect negatively upon him if this insurance claim is pursued. However, Brothers has failed to provide the Court with any evidence of how such an investigation would be contrary to Allstate's business interests, outside the business norms for the insurance industry, or arbitrary on its face. To the contrary, conducting credit and criminal background checks would seem to be in Allstate's best business interests when seeking to determine if a claim has been fraudulently submitted by an insured person.

In its evaluation of the evidence, the Court concludes that Brothers has not met his evidentiary burden to establish a prima facie case that Allstate intentionally discriminated against him. Under these circumstances, the Court has elected not continue to the second and third stages of the *McDonnell Douglas* burden-shifting analysis. Accordingly, a partial summary judgment in favor of Allstate is granted with respect to Brothers's claims of racial discrimination.

B.

In her portion of the complaint, the Plaintiff, Patricia Hart, contends that Allstate had discriminatory ulterior motives when it denied her claim. Allstate counters this argument with a

9

general denial of Hart's charges, along with an assertion that she has failed to proffer any direct or circumstantial evidence that her claim was denied because of her age, race, or gender.

*Age Discrimination*

Hart submits that her age (24 years) was one of the factors that led Allstate to deny her claim for insurance. In an answer to one of Allstate's interrogatories, Hart opined that Allstate had rejected her claim in bad faith "because she was a *young* black female and owner of a home in Detroit." However, a review of the complaint in this action reveals that she has not alleged a claim for age discrimination in this case. (*See, e.g.,* Compl. at ¶ 46) ("Plaintiffs are part of a protected class of persons due to gender, national origin and religion pursuant to [Mich. Comp. Laws] § 32.2302 [*sic*].")

Even if she had properly pled a claim of age discrimination, Hart has failed to submit any direct or circumstantial evidence to substantiate such a cause of action. Michigan law holds that a person can bring an age discrimination claim if she can show that the defendant treated "similarly situated people" differently because of age. *See Cheeseman v. American Multi-Cinema, Inc.*, 310 N.W.2d 408, 414 (Mich. Ct. App. 1981).

There is no dispute between the parties that Hart has not presented any direct evidence of age discrimination. Hart admits that no Allstate employee ever acknowledged that her age was a motivating factor in its decision to deny her insurance claim. Similarly, Hart has not provided the Court with any circumstantial evidence of age discrimination. The Michigan Court of Appeals has held that the ELCRA "contains no designated protected group (i.e., persons older than forty), but merely prohibits discrimination on the basis of age." *Lewis v. Braun-Brumfield, Inc.*, 1998 Mich. App. LEXIS 1567 (Mich. Ct. App. May 22, 1998).

However, Hart neither alleges nor presents any evidence that older Allstate customers who reported house fires were treated differently by this insurance carrier in the processing of their insurance claims. The only fact in the record regarding Hart's age is her conclusory answer to an interrogatory, in which she attributed bad faith by Allstate in its decision to reject her claim (i.e., " she was a young black female and owner of a home in Detroit.") This statement alone is not enough to allow a reasonable fact finder to find in her favor.

Moreover, Hart has not presented the Court with any evidence to show that Allstate's conduct in investigating her claim for alleged fraud was "markedly hostile" or against its financial interests, far outside of widely-accepted business norms, or arbitrary on its face. Indeed, "[n]o rational insurer would gratuitously waive that absolute defense to a claim under the policy of any insured, regardless of [the protected class]." *Harris v. Allstate Ins. Co.*, 83 F. Supp. 2d 423, 432 (S.D.N.Y. 2000). Therefore, to the extent Hart has made a claim for age discrimination under the ELCRA, the Court holds that Allstate is entitled to summary judgment on this issue.

*Racial Discrimination*

Hart has not presented any direct evidence of racial discrimination by Allstate. She also acknowledged in her deposition testimony that no Allstate employee ever mentioned that race was a factor in denying her claim.

Moving forward with the *Keck* framework, the parties both agree that because Hart is African-American, she is part of a protected class under Mich. Comp. Laws § 37.2302. It is also uncontested that Hart was denied an opportunity to recover her insurance benefits for the fire damage to her property even though she was insured by Allstate.

To present a prima facie case of racial discrimination, Hart is required to present proof that

11

she was treated substantively different by Allstate than its white insured persons who had submitted claims for fire losses under similar circumstances in this case. The only evidence that Hart has proffered is a company memoranda which suggests that Allstate may have had some retrospective concerns about its decision to issue a policy to her. However, this memoranda - standing alone - does not constitute evidence that Allstate had racially discriminatory motives in denying her claim.

Similarly, Hart has not proffered any evidence of "markedly hostile" conduct by the Allstate employees who processed her claim. Allstate's investigation into Hart's claim - without more - is not evidence of "markedly hostile" conduct by Allstate. Instead, the investigation appears to have coincided with its legitimate business interest of assuring that it was not processing fraudulently made claims. Therefore, the Court rejects Hart's claim of race discrimination against Allstate.

### *Sex Discrimination*

Those Michigan courts which analyze claims for sex discrimination under the ELCRA standards, utilize the same burden-shifting formulation as used in race discrimination cases. *See Dixon v. W.W. Grainger, Inc.*, 423 N.W.2d 580, 583 (Mich. Ct. App. 1987). Here, Hart's sex discrimination claim must fail for similar reasons as her race discrimination claim.

First, Hart admitted that no Allstate employee ever mentioned that her gender had anything to do with its decision to deny her insurance claim. She has not submitted any other direct evidence of sex discrimination.

Next, Hart also fails to proffer any circumstantial evidence of sex discrimination by Allstate. Although Hart is a woman who belongs to a protected class and was arguably denied the right to enforce her insurance policy, she does not have evidence which shows that similarly situated male

12

customers were treated any differently under similar circumstances.

She has also failed to show how the investigation of her claim by Allstate constitutes "markedly hostile" environment. The steps taken by Allstate - which are not disputed - to investigate her claim appear to be line with an insurance company's business interests in responding favorably only to valid insurance claims.

Hart has failed to meet her prima facie burden in her age, race, and gender discrimination claims. Therefore, a partial summary judgment in favor of Allstate is entered in Hart's case without having to consider Allstate's nondiscriminatory reasons for denying her insurance claim.

C.

No Limit argues that its burglary insurance claim was denied simply because its owner, Mohammed Dib, is of Middle Eastern and Arabic descent. Allstate denies that Dib's nationality and ethnicity had anything to do with its denial of No Limit's claim. Furthermore, Allstate maintains and that No Limit does not have any direct or circumstantial evidence to support its conclusion that discrimination motivated its decision to deny the claim by No Limit.

The Michigan Supreme Court has held that - as a matter of law - a corporate plaintiff cannot state a claim under § 37.2302. *Safiedine v. City of Ferndale*, 755 N.W.2d 659, 659 (Mich. 2008), *aff'g* 753 N.W.2d 260 (Mich. Ct. App. 2008). Therefore, No Limit does not have any standing to bring its claim against Allstate under this statute.

However, even if it were permitted to bring its claim under the ELCRA, No Limit has failed to present any direct evidence of Allstate's alleged ethnic or national origin discrimination. Like the other Plaintiffs in this case, Dib acknowledged in deposition testimony that no one at Allstate ever acknowledged - directly or indirectly - that his ethnicity or nationality played a role in its

13

decision to deny No Limit's claim.

The parties agree that an as individual of Arab descent, Dib is part of a class protected by the ELCRA. No Limit also meets the second prong of the *Keck* framework because Allstate denied No Limit's claim for reimbursement of the inventory that was stolen in the burglary, even though No Limit was current on its insurance premiums.

However, No Limit has failed to provide evidence that its claim was investigated differently than a similarly situated business owner of a different ethnicity or national origin. Dib only asserts conclusory statements - without evidentiary support - that No Limit's claim was denied only because he was Arabic. Dib's beliefs are insufficient for a reasonably jury to find in his favor on this issue.

Similarly, neither No Limit nor Dib allege that any Allstate employees treated either of them in a "markedly hostile" manner. No Limit only contends that the final conclusions that Allstate drew from its independent investigation are inaccurate. No Limit has failed to present evidence that Allstate's investigation was not conducted according to the business norms of the insurance industry or that the investigation was arbitrary and capricious. Hence, there is no genuine issue of a material fact with regard to the Plaintiffs' ELCRA claims.

IV.

Accordingly and for the reasons which have been stated above, the Court grants Allstate's motion for the entry of a partial summary judgment with regard to the Plaintiffs' claims under the Michigan Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, et seq. The issues of breach of contract and breach of fire loss insurance coverage, which were not reviewed by the Court in this order, remain to be litigated by the parties.

IT IS SO ORDERED.

Dated: August 31, 2010                      s/Julian Abele Cook, Jr.
       Detroit, Michigan                    JULIAN ABELE COOK, JR.
                                            United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 31, 2010.

                                            s/ Kay Doaks
                                            Case Manager