UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NO LIMIT CLOTHING, INC.

        Plaintiff,

v.

                                                     Case No. 09-13574

ALLSTATE INSURANCE COMPANY,         Honorable Julian Abele Cook, Jr.

        Defendant.

## ORDER

In this case, the Plaintiff, No Limit Clothing, Inc., complains that the Defendant, Allstate Insurance Company, has unjustifiably refused to honor its request for payment pursuant to the terms of the parties' insurance contract.[1] This application for payment was based upon a contention by No Limit that it had sustained a financial loss as the result of a break-in and theft at its place of business on November 8, 2007. No Limit proclaims that it fully performed its responsibilities in accordance with the parties' insurance contract, but Allstate violated its duties thereunder by wrongfully denying any liability and refusing to pay a legitimate claim.

Currently before the Court is Allstate's motion for an order of partial dismissal and/or for the entry of a partial summary judgment with respect to No Limit's claim for damages to the extent that it is premised on allegations that the insurer had acted in bad faith or asserted false defenses.

---

[1] Prior to the date of this order, the Court entered an order which dismissed Leon Brothers and Patricia Hart without prejudice as Plaintiffs in this civil action.

1

I.

No Limit accuses Allstate of having "failed to act fairly and reasonably in investigating [its] claims, failed to act in good faith, and failed to timely pay [its] claims." (Compl. at ¶ 29). More to the point, No Limit submits that Allstate's alleged wrongful conduct included (1) "failing to make payment of [its] claim within 30 days of the receipt of proof of the amount of loss as required by [Michigan Compiled Laws Annotated] §§ 500.2833 *et seq.*,"[2] and (2) "pursuing false defenses to [its claim] in an attempt to avoid, delay, or compromise payment of [its claim] when [Allstate] did not have sufficient evidence to support the defenses." (Compl. at ¶ 30). Finally, No Limit alleges that Allstate's breach of the parties' insurance contract directly and proximately caused it to sustain the following damages: (1) its financial losses as established by the terms within the contract, and (2) "consequential damages that were in the contemplation of the parties when the contract was made or which are the natural and usual consequences of a breach of such [an insurance policy including, but not limited to] additional damage to the structure . . . , expert fees, adjusting fees, and attorney fees." (Compl. at ¶ 31).

Allstate asserts that inasmuch as Michigan law does not recognize a separate tort for the breach of a covenant of good faith and fair dealing, the Court should enter an order of partial summary judgment or dismissal to the extent that No Limit's claim rests on Allstate's alleged bad faith or assertion of false defenses.

However, No Limit insists that it did not allege a separate claim for the tort of bad faith in

---

[2]Section 2833 applies only to fire insurance policies. This provision, while relevant to the claims of the two dismissed plaintiffs, both of whom asserted actions on fire insurance policies, is inapplicable to No Limit's theft claim. On the other hand, Section 2006(4) provides for a 12% penalty interest on those claims that are not paid within of sixty days of an insurer's receipt of satisfactory proof of loss.

2

conjunction with its breach of contract claim. Rather, No Limit submits that its assertion of bad faith was "directly related" to its breach of contract claim. (Resp. to Def.'s Mot. for Summ. J. at 3). Thus, No Limit seems to argue that its accusation of bad faith by Allstate is not the basis of an independent claim. Rather, No Limit contends that Allstate's alleged bad faith is relevant to a determination of the appropriate damages which arise from its existing breach of contract claim. No Limit states that courts have "held an insurer accountable for the 'bad faith' breach of [its obligation] to process a claim in 'good faith' which renders [it] liable for pecuniary losses which would not have occurred or [are] not otherwise compensated for by statute." (*Id.* at 6).

Allstate, in remaining steadfast on this issue, replies that - whether No Limit's claim is grounded in contract or tort - there does not exist any cause of action or a claim for bad faith under the circumstances presented here.[3] Moreover, Allstate asserts that (1) there is no basis for No Limit's application for extra-contractual damages, including consequential damages, and (2) "an insured's exclusive remedy where an insurer acts in 'bad faith' in response to a claim is an award of penalty interest" under the Uniform Trade Practices Act, Mich. Comp. Laws § 500.2006. (Def.'s Reply to Mot. for Summ. J. at 4). This matter having been fully briefed, Allstate's motion is now ripe for an evaluation and determination by the Court.

II.

The purpose of the summary judgment rule, Federal Rule of Civil Procedure 56, "is to

---

[3]Allstate acknowledges that Michigan law does recognize claims for damages for bad faith in breach of contract actions where an insurer engaged in bad faith failure to settle claims asserted against an insured. *E.g.*, *Commercial Union Ins. Co. v. Liberty Mut. Ins. Co.*, 393 N.W.2d 161 (Mich. 1986); *City of Wakefield v. Globe Indemnity Co.*, 225 N.W. 643 (Mich. 1929).

isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Therefore, the entry of a summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When assessing a request for a summary judgment, the Court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432 (6th Cir. 1987).

In order for a dispute to be genuine, it must contain evidence upon which a jury could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). Thus, the moving party has the initial obligation of identifying the portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. The nonmoving party must then "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also* Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 256. The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The standard of review for a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c)[4] is the same as that which should be undertaken when evaluating a motion brought pursuant to Rule 12(b)(6). *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). Thus, a

---

[4]Fed. R. Civ. P. 12(c) states: "After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings."

district court must accept the plaintiff's well-pleaded allegations as true and construe each of them in a light that is most favorable to it. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). However, this assumption of truth does not extend to the plaintiff's legal conclusions because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). The complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation and internal quotation marks omitted).

In order to survive an application for dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, the "plaintiff [must] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *see also Albrecht*, 617 F.3d at 893 (applying these standards to a motion brought under Rule 12(c)). In essence, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

### III.

Michigan courts - and federal courts applying Michigan law - have long held that breach of an insurance contract, even if done in bad faith, does not give rise to a separate and independent tort claim. *E.g.*, *Cromer v. Safeco Ins. Co. of Am.*, No. 09-13716, 2010 WL 1494469, at *3 (E.D. Mich. Apr. 14, 2010); *Red Cedars, Inc. v. Westchester Fire Ins. Co.*, 686 F. Supp. 614, 615 (E.D. Mich. 1988); *Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 286-87 (Mich. App. 2006); *Kewin*

*v. Mass. Mut. Life Ins. Co.*, 295 N.W.2d 50, 56 (Mich. 1980). Rather, there must exist some tortious conduct wholly independent of the contractual breach. *E.g.*, *Soc'y of St. Vincent De Paul v. Mt. Hawley Ins. Co.*, 49 F. Supp. 2d 1011, 1019 (E.D. Mich. 1999) (citations and internal quotation marks omitted) ("This Court has recently observed that Michigan law does not recognize an independent tort based upon a bad faith breach of contract. Michigan law recognizes a tort claim only when a plaintiff's complaint alleges the breach of duties existing independent of and apart from the contract of insurance."); *Hayley v. Allstate Ins. Co.*, 686 N.W.2d 273, 277 (Mich. App. 2004) ("The failure to pay a contractual obligation or insurance benefits does not amount to outrageous conduct, even if it is done in bad faith or wilfully. In a contractual setting, a tort claim must be based instead on the breach of a duty distinct from the contract.").

No Limit, in submitting that its allegation of bad faith arises from its breach of contract claim, does not attempt to plead a separate cause of action in tort. Allstate counters that Michigan law does not recognize this claim in either tort or contract under the circumstances presented here.

In general, "Michigan law does not recognize an implied contractual duty of good faith." *Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 883 F. Supp. 1101, 1111 (E.D. Mich. 1995) (citing *Red Cedars*, 686 F. Supp. at 615-616; *Dahlman v. Oakland Univ.*, 432 N.W.2d 304, 306 (Mich. App. 1988)). In the insurance context, two exceptions to this rule have been recognized; namely, an insurer has a contractual duty to exercise good faith when (1) negotiating a settlement in third-party liability situations, *see, e.g.*, *Commercial Union Insurance Co. v. Liberty Mutual Insurance Co.*, 393 N.W.2d 161 (Mich. 1986); *City of Wakefield v. Globe Indemnity Co.*, 225 N.W. 643 (Mich. 1929), and (2) investigating and paying claims, *see, e.g.*, *Burnside v. State Farm Fire & Casualty Co.*, 528 N.W.2d 749, 753 (Mich. App. 1995) (noting availability of penalty interest but not

attorney fees as damages for bad faith refusal to pay insurance claim); *see also Aetna*, 883 F. Supp. at 1111 ("Michigan case law regarding the contractual duty of good faith is limited in application. Courts have held only that an insurer has the duty to act in good faith in negotiating a settlement within the policy limits, and the duty to act in good faith in investigating and paying claims."). Thus, a contract-based claim for breach of the implied covenant of good faith in investigating and paying an insurance claim is viable in Michigan.

IV.

Despite the viability of a claim for breach of an implied covenant of good faith - as found in the circumstances presented here - it is not clear to the Court exactly what No Limit hopes to gain by way of additional damages that are purportedly available where a contract is breached in bad as opposed to good faith. In *Sterling Heights v. United National Insurance Co.*, No. 03-72773, 2006 WL 212030, at *9 (E.D. Mich. Jan. 27, 2006), the court initially allowed separate counts, both based in contract, to go forward for (1) breach of the insurance contract, and (2) breach of the implied covenant of good faith and fair dealing in "failing to properly investigate [insured's] claims before initially denying coverage and by subsequently 'abandoning' [i]nsureds during settlement negotiations." Subsequently, however, the *Sterling Heights* court granted a summary judgment to the insurer with respect to the bad faith claim because, even if the insurer had engaged in bad faith conduct in its dealings with the insured, this finding would not have entitled the insured to any additional damages beyond those available for the breach of contract claim. (*See* Tr. of Mar. 15, 2006 Mot. Hr'g, *Sterling Heights v. United Nat'l Ins. Co.*, No. 03-72773, ECF No. 569-2, at 4:7-6:2).

No Limit - unlike in the plaintiff in *Sterling Heights* - has not asserted separate claims for

7

breach of contract and breach of the implied covenant of good faith. Rather, No Limit has alleged bad faith conduct by Allstate as a part of the allegations within its claim for breach of the insurance contract. However, whether Allstate acted in bad or good faith is immaterial to No Limit's ability to recover any of the damages that it seeks to obtain.

Exemplary damages - which No Limit is not seeking here (Resp. to Def.'s Mot. for Summ. J. at 5) - are unavailable in good or bad faith breach of contract situations in the absence of "tortious conduct existing independent of the breach." *Kewin*, 295 N.W.2d at 55 ("In the commercial contract situation, unlike the tort and marriage contract actions, the injury which arises upon a breach is a financial one, susceptible of accurate pecuniary estimation. The wrong suffered by the plaintiff is the same, whether the breaching party acts with a completely innocent motive or in bad faith."). No Limit expressly disclaims any allegation of independent tortious conduct: "[C]ontrary to . . . Allstate's assertions in this motion, [No Limit is] not claiming a separate independent tort for breach of contract of 'good faith.'" (Resp. to Def.'s Mot. for Summ. J. at 5) (emphasis in original).

An insurer's good or bad faith is irrelevant to the applicability of the Michigan Insurance Code provision that assesses a 12% penalty interest for failure to timely pay benefits to an insured.[5] Mich. Comp. Laws § 500.2006(4) provides, in relevant part, as follows:

> If benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. If the claimant is a third party tort claimant, then the benefits paid shall bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of

---

[5]The Court notes that the claim for penalty interest appears only in the now-dismissed plaintiffs' count for fire loss coverage. However, because § 2006(4) is not limited to fire insurance contracts, and for the sake of thoroughness, the Court will also address this provision.

8

> 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer has refused payment in bad faith and the bad faith was determined by a court of law.

Mich. Comp. Laws § 500.2006(4). Although an insurer's bad faith is a prerequisite for the applicability of the penalty interest when the payment is to be made to a third-party tort claimant, No Limit is the insured - not a third-party claimant.[6] *See Hawthorne v. Lincoln Gen. Ins. Co.*, No. 08-12325, 2009 WL 1035293, at *2 (E.D. Mich. Apr. 16, 2009) (to be entitled to 12% penalty interest, third-party tort claimants, unlike insureds or other parties directly entitled to benefits under an insurance contract, must demonstrate that the claim was not reasonably in dispute and the insurer refused payment in bad faith). Therefore, the entitlement of No Limit to receive the 12% penalty interest hinges on whether - and if so, when - the claim was submitted to Allstate along with satisfactory proof of its losses. If No Limit can demonstrate that Allstate failed to make the payment within a sixty-day period of such submission, it could claim entitlement to the penalty interest regardless of Allstate's good or bad faith.

---

[6]It should be noted that earlier decisions did read the "not reasonably in dispute" and bad faith requirements into the provision relating to penalty interest with respect to first-party claimants. *E.g.*, *Angott v. Chubb Grp. Ins.*, 717 N.W.2d 341, 350-51 (Mich. App. 2006); *Arco Indus. Corp. v. Am. Motorists Ins. Co.*, 594 N.W.2d 74, 76 (Mich. App. 1998). However, this interpretation has been expressly rejected by later panels, which, in recent years, have consistently held that the 12% penalty interest is available to first-party insureds regardless of whether the claim is disputed. *Griswold Props., LLC v. Lexington Ins. Co.*, 741 N.W.2d 549, 557 (Mich. App. 2007) (citations and internal quotation marks omitted) ("[We] find that the 'reasonably in dispute' language of [Michigan Compiled Laws §] 500.2006(4) applies only to third-party tort claimants; if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance, and benefits are not paid on a timely basis, the claimant is entitled to 12 percent interest, irrespective of whether the claim is reasonably in dispute."); *see also, e.g.*, *Hawthorne v. Lincoln Gen. Ins. Co.*, No. 08-12325, 2009 WL 1035293, at *2 (E.D. Mich. Apr. 16, 2009). Therefore, whether an insurer's refusal to pay is reasonable - and thus in good faith - is no longer relevant to the operation of the penalty interest provision with respect to first-party claimants.

Moreover, a breaching party's good or bad faith is immaterial with respect to the availability of consequential damages. In *Wendt v. Auto Insurance Co.*, 401 N.W.2d 375, 379 (Mich. App. 1986), the Michigan Court of Appeals held that "the breach of an insurer's obligation to process a claim in good faith renders an insurer liable for pecuniary losses which are not otherwise compensated for by statute." However, later decisions make clear that the availability of such consequential damages does not depend on whether a contract was breached in good or bad faith. *E.g.*, *Red Cedars*, 686 F. Supp. 614, 616 and n.1 (E.D. Mich. 1988) (citing *Wendt*, 401 N.W.2d at 379-380; *Kewin*, 295 N.W.2d at 55) ("The Michigan Court of Appeals [in *Wendt*] stated that an insured may recover for pecuniary losses which result from the insurer's failure to process a claim in good faith . . . . The court's language should not be understood as requiring a showing of bad faith. As the Michigan Supreme Court stated [in *Kewin*], in a commercial contract situation a breach is a breach. The breaching party's motive is not material.").

Likewise, the cases that have been cited by No Limit in support of its ability to recover consequential damages for Allstate's breach of contract do not condition the availability of those damages on the insurers' good or bad faith. *See Salamey v. Aetna Cas. & Sur. Co.*, 741 F.2d 874, 877 (6th Cir. 1984) (citations and internal quotation marks omitted) ("A contract to insure against fire loss is a commercial contract, and damages for its breach are generally limited to the monetary value of the contract. However, Michigan law follows the rule of *Hadley v. Baxendale*, 156 Eng. Rep. 145 (1854), which held that the damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made."); *Parmet Homes, Inc. v. Republic Ins. Co.*, 314 N.W.2d 453, 457-58 (Mich. App. 1981). Thus, No Limit's entitlement to consequential damages depends on its ability to show

that (1) Allstate breached the parties' contract, and (2) the claimed damages arose naturally from the breach or were in the contemplation of the parties when the contract was made - and not based upon a showing of insurer's good or bad faith.

Finally, attorney fees are not available as consequential damages in a breach of an insurance contract claim, even if the breaching party acted in bad faith. *Burnside*, 528 N.W.2d at 753. *Burnside* expressly rejected the contrary decision by the Sixth Circuit in *Murphy v. Cincinnati Insurance Co.*, 772 F.2d 273 (6th Cir. 1985), stating that "we reject the Sixth Circuit's decision in *Murphy* and hold that the recovery of attorney fees incurred as a result of an insurer's bad-faith refusal to pay an insured's claim is governed by the American rule." 528 N.W.2d at 753, *see also Cromer*, 2010 WL 1494469, at *7 (listing cases).[7] Therefore, Allstate's good or bad faith is also immaterial to No Limit's request for attorney fees.

Based on the foregoing, it is clear to this Court that Allstate's good or bad faith is irrelevant to the availability of any of the damages that No Limit has requested. With recognition that a showing of bad faith would not entitle No Limit to any of the damages that it seeks to obtain here, its allegation of bad faith does not constitute "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and, therefore, it has failed to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6); *Iqbal*, 129 S.Ct. at 1949. Therefore, the Court must, and does, dismiss No Limit's claim for damages solely to the extent that it relies upon allegations of bad faith conduct by Allstate.

---

[7]When sitting in diversity actions, this Court is not bound by a ruling of the Sixth Circuit which conflicts with a subsequently rendered state appellate decision. For a thorough explanation of the effect of later Michigan appellate decisions on *Murphy*, see *Cromer*, 2010 WL 1494469, at *8.

V.

For the reasons that have been set forth above, and pursuant to Federal Rules of Civil Procedure 12(c) and 56, the Court grants Allstate's motion for dismissal and summary judgment with respect to No Limit's claims for damages to the extent that they are based on allegations that Allstate acted in bad faith or asserted false defenses.

IT IS SO ORDERED.

Dated: January 12, 2011       s/Julian Abele Cook, Jr.
     Detroit, Michigan       JULIAN ABELE COOK, JR.
                                             United States District Court Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on January 12, 2011.

                                                            s/ Kay Doaks
                                                            Case Manager